# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAN BUKOWSKI, ) | |
| ) | Case No. 2019-cv-6859 |
| Plaintiff, ) | |
| ) | Hon. Sharon Johnson Coleman |
| v. ) | |
| ) | Magistrate Judge Maria Valdez |
| ) | |
| CHICAGO MEAT AUTHORITY, INC., ) | |
| ) | JURY DEMANDED |
| ) | |
| Defendant. ) | |

## AMENDED COMPLAINT

NOW COMES the Plaintiff, Jan Bukowski, by and through his attorneys, FUKSA KHORSHID, LLC, and for his Amended Complaint against Defendant, Chicago Meat Authority, Inc., states as follows:

## INTRODUCTION

1. Plaintiff Jan Bukowski ("Plaintiff" or "Bukowski") seeks redress for age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §623 *et seq*. ("ADEA"); creating a hostile work environment in violation of the Illinois Human Rights Act ("IHRA") (775 ILCS § 5/1-101, *et seq.*) against Chicago Meat Authority, Inc. ("Defendant" or "CMA"); and, for creating a hostile work environment in violation of the ADEA against CMA.

2. Defendant's actions as alleged herein constitute a continuing violation.

## JURISDICTION & VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. §1331 this case arises under federal law, namely the ADEA. This Court also has jurisdiction pursuant to ADEA 29 U.S.C.

§626(c)(1). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367(a).

4. Plaintiff filed a charge of age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") which is contemporaneously cross-filed with the Illinois Department of Human Rights ("IDHR") on or about March 29, 2019. A true and accurate copy of Plaintiff's Charge of Discrimination is attached and incorporated as <u>Exhibit A</u>.

5. On or about July 18, 2019, the EEOC issued a "Notice of Right to Sue" to Plaintiff. Plaintiff's ADEA, and IHRA claims are timely made within 90 days of the EEOC's notice, giving him the right to file those claims. Plaintiff's original complaint was timely filed on or about October 16, 2019.

6. Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b).

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

7. Plaintiff Bukowski is a 64 year-old male and a resident of Cook County, Illinois.

8. Defendant CMA is an Illinois for-profit corporation engaged in the production and distribution of meat products.

9. CMA's corporate headquarters is located at 1120 W. 47th Place, Chicago, Illinois 60609, and on information and belief CMA operates a meat processing plant located at or near this address (the "Chicago Plant").

10. Kazimierz Hornik, at all relevant times, was employed by CMA as a supervisor of Defendant's employees at the Chicago Plant, including the Plaintiff.

11. In addition, Plaintiff was also under the supervision of Taiwo Sheleru who oversaw maintenance and upkeep of Defendant's equipment and who assigned tasks and other daily job duties to employees, including Plaintiff.

12. Plaintiff began working for CMA in or about February, 2017 and worked as an electrical-mechanic maintenance worker at the Chicago Plant.

13. At all times during Plaintiff's employment, Hornik and Sheleru supervised Plaintiff and Plaintiff reported to Hornik and Sheleru.

14. Plaintiff satisfactorily performed his duties at all times during his employment.

15. During Bukowski's employment, Defendant subjected Bukowski to age discrimination, and created and perpetuated a hostile work environment, including but not limited to making comments regarding Plaintiff's age (including the solicitation of a quid pro quo from Plaintiff in order to keep his job), and exposed Plaintiff to adverse employment consequences including termination of Plaintiff's employment due to his age.

16. Plaintiff first experienced unequal treatment due to his age in or about May, 2018 in an incident involving another co-worker, Danny Bernotus ("Bernotus"). At or about this time, several of Defendant's maintenance employees would take a morning break set to begin at approximately 8:30 a.m. These maintenance employees (which includes Plaintiff) would stagger this break such that three employees would leave for their break, while at least one individual stayed behind to be present in case of emergency.

17. On this particular occasion, three other maintenance workers took their morning break at 8:30 a.m. Plaintiff stayed behind so that at least one individual was present in case of emergency. Upon the return of these three employees, Plaintiff then proceeded to take this break beginning at 9:00 a.m.

3

18. However, upon learning that Plaintiff was taking his break at 9:00 a.m., Bernotus verbally berated Plaintiff and ordered that he immediately return to work. Bernotus then escalated the situation and reported Bukowski to a Human Resources staff member named Patricia.

19. Plaintiff met with Patricia and explained the process whereby one employee would stay behind in case of emergency, but Patricia refused to acknowledge Plaintiff's explanation of the misunderstanding. She also refused to document Plaintiff's recollection of the incident or take any further action inform Plaintiff of Defendant's policy going forward.

20. Instead, Defendant suspended Plaintiff from work for three days as a result of this incident.

21. This disproportionate level discipline against Plaintiff combined with Human Resources' complete lack of impartiality in receiving and addressing Plaintiff's complaints was carried out and directed towards Plaintiff because of his age. Defendant marginalized Plaintiff and levied an unequal level of discipline against him in order to force Plaintiff out of his employment or to otherwise create a pretextual basis to terminate his employment.

22. In or about November, 2018, while Bukowski was at work he was approached by Hornik. In their conversation, Hornik then told Bukowski that he was "too old" to continue in his position or to keep his job.

23. Then Hornik propositioned Bukowski and said that he could held Bukowski keep his job on the condition that Bukowski pay Hornik a sum of $2,000. Hornik then threatened Bukowski's job and said that if Bukowski was unwilling to pay Hornik's demand, that Defendant would terminate Bukowski's employment and find a younger person to take his place.

24. Bukowski unequivocally declined Hornik's proposition and refused to pay the demand.

25. After the encounter, Hornik began to treat Bukowski differently than his coworkers. Hornik drastically limited his interactions with Bukowski and persistently found flaws and faults in Bukowski's performance when objectively no such flaws or faults existed.

26. Hornik continued to single out Plaintiff and treat him differently because Hornik believed that Plaintiff was too old to continue working for Defendant. This included but is not necessarily limited to forcing Plaintiff to eat his lunch alone by scheduling his lunch break separately from any other employees.

27. Defendant continued to allow Plaintiff to be mistreated by his coworkers in the months that followed.

28. In or about January, 2019, a machine had ran out of plastic wrap and Plaintiff took the initiative to tend to the back of the machine to install a new roll. It was at this time that Bernotus snuck up on Plaintiff and stuck a long piece of packing tape on Plaintiff's backside. Initially, Plaintiff discovered the tape and asked Bernotus to stop the behavior.

29. A short while later, Bernotus continued to pick on Plaintiff and once again surreptitiously stuck a long piece of packing tape on Plaintiff's backside to create the look of a tail.

30. Plaintiff had not immediately noticed the ongoing trick that Bernotus had pulled until Plaintiff saw several co-workers looking at him and laughing. Plaintiff then noticed the tape, removed it and threw it away.

31. During this incident Plaintiff did not touch or otherwise escalate the conflict with any other employee.

32. Shortly thereafter, another employee named Wanda Las balled up the tape, threw it at Plaintiff while calling him a "stupid idiot." There was no write up by Defendant or its Human Resources department on any of these incidents.

33. On or about February 7, 2019 at 5:00 a.m., Bukowski was servicing and preparing a "VC999" machine for operation as instructed by another supervisor, Taiwo Sheleru ("Sheleru").

34. At or about 5:30 a.m., Sheleru returned to the area and found Bukowski sharpening blades for the VC999 machine. Sheleru instructed Bukowski to stop sharpening the machine's blades.

35. In response, Bukowski explained to Sheleru that the work had just been completed and that he had finished the blade sharpening. Sheleru, misconstruing Bukowski's explanation as insubordination, then raised his voice to Bukowski and ordered Bukowski to return to the office.

36. Bukowski explained that the office was still closed at that time of day and Sheleru responded by hitting Bukowski on the back of and top of his head and Sheleru shoved Bukowski into a nearby sink.

37. That morning, Bukowski attempted to report the incident to another supervisor. This supervisor indicated that he would pull Sheleru aside and speak with him about his treatment towards Bukowski. Bukowski's supervisor further instructed Bukowski to meet with human resources to file an accident report.

38. Bukowski met with Defendant's human resources department on the afternoon of February 7, 2019. At that meeting, the human resources representative, Patricia, asked Plaintiff if he understood what it meant to be "fired." Patricia then notified Plaintiff that his employment was terminated effective immediately.

39. Bukowski was denied the opportunity to submit an accident report or any other report on the incident with Sheleru. At the time of his termination, Patricia knew of the incident involving Hornik's quid pro quo and his demand for payment in exchange to protect Plaintiff's job.

40. Bukowski's employment was terminated on February 7, 2019. At this time he was 64 years old.

41. On or about March 29, 2019 Plaintiff filed a charge of discrimination based on age discrimination and hostile work environment with the EEOC, which is shared with the IDHR through the agencies' work-share agreement.

## COUNT I
## Violation of the ADEA for Age Discrimination

42. Plaintiff restates and realleges by reference paragraphs 1 through 41 above as though fully set forth herein against Defendant.

43. On or about March 29, 2019, Bukowski filed a charge of discrimination based on his age against CMA with the EEOC. A true and accurate copy of the charge is attached hereto as Exhibit A.

44. The EEOC issued a Notice of Right to Sue on or about July 18, 2019. A true and accurate copy of the Notice is attached hereto as Exhibit B.

45. Bukowski was 64 years old at the time of his termination and was a member of the ADEA's protected class of workers over the age 40.

46. On or about February 7, 2019 Bukowski suffered an adverse employment action when he was terminated from his employment with CMA due to his age.

47. During the term of his employment, Bukowski met the expectations required of his position and performed his job duties competently and as instructed by his supervisors.

48. Bukowski suffered an adverse employment action when Hornik (Defendant's employee and agent) made comments about Bukowski's age and told Bukowski that he was "too old" to continue working for Defendant. Hornik also attempted to extort $2,000 from Bukowski feigning a promise that payment would ensure Bukowski's continued employment with CMA.

49. Bukowski also suffered an adverse employment action when he was terminated, without cause, after the incident involving Taiwo Sheleru in which Sheleru hit and shoved Bukowski for allegedly not following Sheleru's instructions.

50. CMA's basis for terminating Bukowski was unsupported by the underlying facts and was used merely as a pretext for terminating Bukowski due to his age.

51. CMA unlawfully discriminated against Plaintiff when it terminated Bukowski due to his age and not because of his performance or ability to perform his job.

52. As a direct and proximate result of CMA's actions, Plaintiff has suffered severe compensatory damages, including without limitation, loss of employment, damage to his professional reputation, back pay, front pay, overtime pay, vacation days, retirement benefits and other benefits, emotional distress, and other make whole damages.

WHEREFORE, Plaintiff, Jan Bukowski, prays that this Honorable Court enter judgment in his favor and against Defendant Chicago Meat Authority, Inc. and grant relief in the following form:

A. All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. Defendant be required to pay prejudgment and post judgment interest to Plaintiff on these damages;

D. A declaratory judgment that Defendant's action violated the ADEA;

E. An award of reasonable attorneys' fees, costs, and litigation expenses; and,

F. Such other relief as the Court may deem just or equitable.

## COUNT II
## Violation of IHRA for Age Discrimination and Hostile Work Environment

53. Plaintiff restates and realleges by reference paragraphs 1 through 52 above as though fully set forth herein against Defendant.

54. Defendant CMA is an "employer" within the meaning of the IHRA.

55. Plaintiff is an "employee" within the meaning of the IHRA.

56. Defendant violated the statue by subjecting Plaintiff to age discrimination and a hostile work environment.

57. Defendant, as an employer, is subject to the requirements of the IHRA.

58. Defendant, as an employer, should not discriminate against its employees because of their age.

59. Defendant, as an employer, has an obligation to ensure that its employees are not discriminated against based on their age.

60. Defendant knows that employment decisions cannot be made on the basis of an employee's age.

61. Defendant knows that it has an obligation to ensure that employees are not subjected to a hostile work environment based on age.

62. Defendant knows that it has an obligation to ensure that employees are not subjected to a hostile work environment based on the fact that an employee has complained about unlawful conduct, discrimination, and/or a hostile work environment.

63. Defendant, as an employer, should have a policy against discrimination and harassment.

64. Defendant violated that policy by discriminating against Plaintiff based on his age.

65. As a result of Defendant's unlawful conduct, Plaintiff has suffered compensatory damages, lost wages, back pay and front pay, lost future wages, future pecuniary damages, humiliation and embarrassment, damage to his reputation, emotional distress, and other make whole damages.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount to be proven in excess of $50,000 and such other relief as the Court may deem just or equitable, including but not limited to compensatory damages, back pay, front pay, pre judgment interest, lost future wages, future pecuniary damages, reasonable attorneys' fees, costs, and litigation expenses as a result of Defendant's unlawful conduct.

## COUNT III
### Violation of the ADEA for Hostile Work Environment

66. Plaintiff restates and realleges by reference paragraphs 1 through 65 above as though fully set forth herein against Defendant.

67. The actions of Defendant, as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of his age, in violation of the ADEA.

68. Defendant CMA is an "employer" within the meaning of the ADEA.

69. Plaintiff is an "employee" within the meaning of the ADEA.

70. Plaintiff has performed all conditions precedent to filing this case under the ADEA.

71. Defendant violated the ADEA by subjecting Plaintiff to age discrimination and a hostile work environment.

72. Specifically, Defendant (through its agent) made comments about Plaintiff's ability to continue his employment due to his age and conditioned Plaintiff's continued employment on the payment of a sum of $2,000 to Hornik.

73. Further, Defendant perpetuated a hostile work environment by allowing its employees, such as Sheleru, to physically assault Plaintiff at his workplace, and failing to discipline its employees for using physical violence against Plaintiff.

74. Defendant also allowed employees, including Danny Bernotus, to tease, humiliate, insult, harass and bully Plaintiff without reprimanding Bernotus and others or otherwise imposing any consequences against him for this improper behavior.

75. Defendant failed to take any action to curtail the misconduct of its employees, and in the process knew or should have known that its employees were engaging in severe and pervasive harassment directed towards the Plaintiff as a result of his age.

76. Defendant's conduct, carried out through its employees, created a subjectively and objectively hostile work environment for Plaintiff due to Plaintiff's age.

77. Defendant, as an employer, is subject to the requirements of the ADEA.

78. Defendant, as an employer, should not discriminate against its employees because of their age and it has an obligation to ensure that its employees are not discriminated against based on their age.

79. Defendant knows that employment decisions cannot be made on the basis of an employee's age and that it has an obligation to ensure that employees are not subjected to a hostile work environment based on age.

80. Defendant knows that it has an obligation to ensure that employees are not subjected to a hostile work environment based on the fact that Bukowski reported each of the

above described incidents to his supervisor and/or to Defendant's Human Resources department and had attempted to submit a written complaint about unlawful conduct, discrimination, and/or a hostile work environment which Human Resources declined to make part of Plaintiff's file.

81. Defendant, as an employer, should have a policy against age discrimination and harassment.

82. Defendant subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Plaintiff's employment and by knowingly failing and refusing to protect Plaintiff from those hostile and abusive conditions.

83. As a result of Defendant's unlawful conduct, Plaintiff has suffered compensatory damages, lost wages, back pay and front pay, lost future wages, future pecuniary damages, humiliation and embarrassment, damage to her reputation, emotional distress, and other make whole damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in Plaintiff's favor and against the Defendant for the following:

A. All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B. Compensatory damages in an amount to be determined at trial;

C. Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D. A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

E. A permanent injunction requiring that the Defendant adopts employment practices and policies in accord and conformity with the requirements of the ADEA, and further

requiring that Defendant adopts and initiate effective remedial actions to ensure equal treatment of employees regardless of age;

F. A declaratory judgment that Defendant's actions violate the ADEA;

G. The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

H. An award of reasonable attorneys' fees, costs, and litigation expenses; and,

I. Such other relief as the Court may deem just or equitable.

Respectfully Submitted,
FUKSA KHORSHID, LLC

*/s/ Vincent P. Formica*
Vincent P. Formica
*Attorney for Plaintiff*

Lucas M. Fuksa (ARDC No. 6277498)
Vincent P. Formica (ARDC No. 6319168)
FUKSA KHORSHID, LLC
200 W. Superior, Suite 410
Chicago, IL 60654
T: 312.266.2221
F: 312.266.2224
lucas@fklawfirm.com
vince@fklawfirm.com

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

*/s/ Vincent P. Formica*
Vincent P. Formica
*Attorney for Plaintiff*
