**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAN BUKOWSKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:19-cv-06859** |
| | ) | |
| **v.** | ) | **Judge Sharon Johnson Coleman** |
| | ) | |
| **CHICAGO MEAT AUTHORITY, INC.,** | ) | **Magistrate Judge Maria Valdez** |
| | ) | |
| **Defendant.** | ) | |

**ANSWER AND AFFIRMATIVE AND OTHER DEFENSES
TO AMENDED COMPLAINT**

For its Answer and Affirmative and Other Defenses to plaintiff Jan Bukowski's ("plaintiff"

or "Bukowski") Amended Complaint, defendant Chicago Meat Authority, Inc. ("CMA" or

"defendant"), states as follows:

**INTRODUCTION**

1.      Plaintiff Jan Bukowski ("Plaintiff" or "Bukowski") seeks redress for age discrimination in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §623 *et seq.* ("ADEA"); creating a hostile work environment in violation of the Illinois Human Rights Act ("IHRA") (775 ILCS § 5/1-101, *et seq.*) against Chicago Meat Authority, Inc. ("Defendant" or "CMA"); and, for creating a hostile work environment in violation of the ADEA against CMA.

**ANSWER:**      CMA admits only that Plaintiff asserts claims under ADEA and the IHRA and

denies that CMA violated these statutes.

2.      Defendant's actions as alleged herein constitute a continuing violation.

**ANSWER:**      CMA denies the allegations in Paragraph 2.

**JURISDICTION & VENUE**

3.      This Court has jurisdiction pursuant to 28 U.S.C. §1331 this case arises under federal law, namely the ADEA. This Court also has jurisdiction pursuant to ADEA 29 U.S.C. §626(c)(1). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367(a) [sic].

**ANSWER:** CMA admits this Court has original jurisdiction over plaintiff's ADEA claims and supplemental jurisdiction over his IHRA claim.

4. Plaintiff filed a charge of age discrimination with the United States Equal Employment Opportunity Commission ("EEOC") which is [sic] contemporaneously cross-filed with the Illinois Department of Human Rights ("IDHR") on or about March 29, 2019. A true and accurate copy of Plaintiff's Charge of Discrimination is attached and incorporated as <u>Exhibit A</u>.

**ANSWER:** CMA admits that plaintiff filed a Charge of Discrimination ("Charge") with the EEOC which alleges a violation of ADEA only, the Charge is attached to the Amended Complaint as Exhibit A, and Exhibit A contains a date stamp which suggests the Charge was received by the EEOC on March 29, 2019. CMA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 4 and, therefore, denies them.

5. On or about July 18, 2019, the EEOC issued a "Notice of Right to Sue" to Plaintiff. Plaintiff's ADEA, and IHRA claims are timely made within 90 days of the EEOC's notice, giving him the right to file those claims. Plaintiff's original complaint was timely filed on or about October 16, 2019.

**ANSWER:** CMA admits only that the EEOC issued a "Dismissal and Notice of Rights," dated July 18, 2019, which found no reasonable cause to believe that age discrimination had occurred in violation of ADEA. CMA denies the remaining allegations in Paragraph 5.

6. Venue is appropriate in the Northern District of Illinois pursuant to 28 U.S.C. §1391(b).

**ANSWER:** CMA admits that venue is appropriate.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

7. Plaintiff Bukowski is a 64 year-old male and a resident of Cook County, Illinois.

**ANSWER:** CMA admits that plaintiff is a man and was in his early 60s when CMA hired and fired him but denies that he is 64 years old. CMA lacks specific knowledge or information sufficient to form a belief as to the truth of the allegation that he is a resident of Cook County, Illinois and, therefore, denies the remaining allegations in Paragraph 7.

8.  Defendant CMA is an Illinois for-profit corporation engaged in the production and distribution of meat products.

**ANSWER:**  CMA admits the allegations in Paragraph 8.

9.  CMA's corporate headquarters is located at 1120 W. 47th Place, Chicago, Illinois 60609, and on information and belief CMA operates a meat processing plant located at or near this address (the "Chicago Plant").

**ANSWER:**  CMA admits the allegations in Paragraph 9.

10.  Kazimierz Hornik, at all relevant times, was employed by CMA as a supervisor of Defendant's employees at the Chicago Plant, including the Plaintiff.

**ANSWER:**  CMA admits that Kazimierz (Casey) Hornik was an employee during Plaintiff's short employment and supervised some employees. CMA denies the remaining allegations in Paragraph 10.

11.  In addition, Plaintiff was also under the supervision of Taiwo Sheleru who oversaw maintenance and upkeep of Defendant's equipment and who assigned tasks and other daily job duties to employees, including Plaintiff.

**ANSWER:**  CMA admits that Taiwo Sheleru was an employee during Plaintiff's short employment, that his position was Lead, which is not a management-level position, and that he assigned tasks to maintenance employees as Lead. CMA denies the remaining allegations in Paragraph 11.

12.  Plaintiff began working for CMA in or about February, 2017 and worked as an electrical-mechanic maintenance worker at the Chicago Plant.

**ANSWER:**  CMA admits that it hired Plaintiff as a maintenance worker in February 2017, and that he worked at 1120 W. 47th Place. CMA denies the remaining allegations in Paragraph 12.

13.  At all times during Plaintiff's employment, Hornik and Sheleru supervised Plaintiff and Plaintiff reported to Hornik and Sheleru.

**ANSWER:**  CMA denies the allegations in Paragraph 13.

14.  Plaintiff satisfactorily performed his duties at all times during his employment.

**ANSWER:**  CMA denies the allegations in Paragraph 14.

15. During Bukowski's employment, Defendant subjected Bukowski to age discrimination, and created and perpetuated a hostile work environment, including but not limited to making comments regarding Plaintiff's age (including the solicitation of a quid pro quo from Plaintiff in order to keep his job), and exposed Plaintiff to adverse employment consequences including termination of Plaintiff's employment due to his age.

**ANSWER:** CMA denies the allegations in Paragraph 15.

16. Plaintiff first experienced unequal treatment due to his age in or about May, 2018 in an incident involving another co-worker, Danny Bernotus ("Bernotus"). At or about this time, several of Defendant's maintenance employees would take a morning break set to begin at approximately 8:30 a.m. These maintenance employees (which includes Plaintiff) would stagger this break such that three employees would leave for their break, while at least one individual stayed behind to be present in case of emergency.

**ANSWER:** CMA admits that maintenance employees took staggered breaks to ensure adequate

coverage and denies the remaining allegations in Paragraph 16.

17. On this particular occasion, three other maintenance workers took their morning break at 8:30 a.m. Plaintiff stayed behind so that at least one individual was present in case of emergency. Upon the return of these three employees, Plaintiff then proceeded to take this break beginning at 9:00 a.m.

**ANSWER:** CMA denies the allegations in Paragraph 17.

18. However, upon learning that Plaintiff was taking his break at 9:00 a.m., Bernotus verbally berated Plaintiff and ordered that he immediately return to work. Bernotus then escalated the situation and reported Bukowski to a Human Resources staff member named Patricia.

**ANSWER:** CMA denies the allegations in Paragraph 18.

19. Plaintiff met with Patricia and explained the process whereby one employee would stay behind in case of emergency, but Patricia refused to acknowledge Plaintiff's explanation of the misunderstanding. She also refused to document Plaintiff's recollection of the incident or take any further action [sic] inform Plaintiff of Defendant's policy going forward.

**ANSWER:** CMA denies the allegations in Paragraph 19.

20. Instead, Defendant suspended Plaintiff from work for three days as a result of this incident.

**ANSWER:** CMA admits that plaintiff was suspended for three days in 2018 as a result of multiple policy infractions and insubordination. CMA denies the remaining allegations in Paragraph 20.

21. This disproportionate level [sic] discipline against Plaintiff combined with Human Resources' complete lack of impartiality in receiving and addressing Plaintiff's complaints was carried out and directed towards Plaintiff because of his age. Defendant marginalized Plaintiff and levied an unequal level of discipline against him in order to force Plaintiff out of his employment or to otherwise create a pretextual basis to terminate his employment.

**ANSWER:** CMA denies the allegations in Paragraph 21.

22. In or about November, 2018, while Bukowski was at work he was approached by Hornik. In their conversation, Hornik then told Bukowski that he was "too old" to continue in his position or to keep his job.

**ANSWER:** CMA denies the allegations in Paragraph 22.

23. Then Hornik propositioned Bukowski and said that he could held [sic] Bukowski keep his job on the condition that Bukowski pay Hornik a sum of $2,000. Hornik then threatened Bukowski's job and said that if Bukowski was unwilling to pay Hornik's demand, that Defendant would terminate Bukowski's employment and find a younger person to take his place.

**ANSWER:** CMA denies the allegations in Paragraph 23.

24. Bukowski unequivocally declined Hornik's proposition and refused to pay the demand.

**ANSWER:** CMA denies the allegations in Paragraph 24.

25. After the encounter, Hornik began to treat Bukowski differently than his coworkers. Hornik drastically limited his interactions with Bukowski and persistently found flaws and faults in Bukowski's performance when objectively no such flaws or faults existed.

**ANSWER:** CMA denies the allegations in Paragraph 25.

26. Hornik continued to single out Plaintiff and treat him differently because Hornik believed that Plaintiff was too old to continue working for Defendant. This included but is not necessarily limited to forcing Plaintiff to eat his lunch alone by scheduling his lunch break separately from any other employees.

**ANSWER:** CMA denies the allegations in Paragraph 26.

27. Defendant continued to allow Plaintiff to be mistreated by his coworkers in the months that followed.

**ANSWER:**     CMA denies the allegations in Paragraph 27.

28.     In or about January, 2019, a machine had ran out of plastic wrap and Plaintiff took the initiative to tend to the back of the machine to install a new roll. It was at this time that Bernotus snuck up on Plaintiff and stuck a long piece of packing tape on Plaintiff's backside. Initially, Plaintiff discovered the tape and asked Bernotus to stop the behavior.

**ANSWER:**     CMA denies the allegations in Paragraph 28.

29.     A short while later, Bernotus continued to pick on Plaintiff and once again surreptitiously stuck a long piece of packing tape on Plaintiff's backside to create the look of a tail.

**ANSWER:**     CMA denies the allegations in Paragraph 29.

30.     Plaintiff had not immediately noticed the ongoing trick that Bernotus had pulled until Plaintiff saw several co-workers looking at him and laughing. Plaintiff then noticed the tape, removed it and threw it away.

**ANSWER:**     CMA denies the allegations in Paragraph 30.

31.     During this incident Plaintiff did not touch or otherwise escalate the conflict with any other employee.

**ANSWER:**     CMA denies the allegations in Paragraph 31.

32.     Shortly thereafter, another employee named Wanda Las balled up the tape, threw it at Plaintiff while calling him a "stupid idiot." There was no write up by Defendant or its Human Resources department on any of these incidents.

**ANSWER:**     CMA denies the allegations in Paragraph 32.

33.     On or about February 7, 2019 at 5:00 a.m., Bukowski was servicing and preparing a "VC999" machine for operation as instructed by another supervisor, Taiwo Sheleru ("Sheleru").

**ANSWER:**     CMA admits that on or about February 7, 2019, plaintiff was working on the VC999 machine and denies the remaining allegations in Paragraph 33.

34.     At or about 5:30 a.m., Sheleru returned to the area and found Bukowski sharpening blades for the VC999 machine. Sheleru instructed Bukowski to stop sharpening the machine's blades.

**ANSWER:**     CMA admits that Taiwo Sheleru asked plaintiff to stop sharpening a blade and denies the remaining allegations in Paragraph 34.

35.     In response, Bukowski explained to Sheleru that the work had just been completed and that he had finished the blade sharpening. Sheleru, misconstruing Bukowski's explanation as insubordination, then raised his voice to Bukowski and ordered Bukowski to return to the office.

**ANSWER:**     CMA denies the allegations in Paragraph 35.

36.     Bukowski explained that the office was still closed at that time of day and Sheleru responded by hitting Bukowski on the back of and top of his head and Sheleru shoved Bukowski into a nearby sink.

**ANSWER:**     CMA denies the allegations in Paragraph 36.

37.     That morning, Bukowski attempted to report the incident to another supervisor. This supervisor indicated that he would pull Sheleru aside and speak with him about his treatment towards Bukowski. Bukowski's supervisor further instructed Bukowski to meet with human resources to file an accident report.

**ANSWER:**     CMA denies the allegations in Paragraph 37.

38.     Bukowski met with Defendant's human resources department on the afternoon of February 7, 2019. At that meeting, the human resources representative, Patricia, asked Plaintiff if he understood what it meant to be "fired." Patricia then notified Plaintiff that his employment was terminated effective immediately.

**ANSWER:**     CMA admits that it met with plaintiff to terminate his employment on February 7, 2019, and that Patricia, the Human Resources Manager, discussed plaintiff's discharge with him. CMA denies the remaining allegations in Paragraph 38.

39.     Bukowski was denied the opportunity to submit an accident report or any other report on the incident with Sheleru. At the time of his termination, Patricia knew of the incident involving Hornik's quid pro quo and his demand for payment in exchange to protect Plaintiff's job.

**ANSWER:**     CMA denies the allegations in Paragraph 39.

40.     Bukowski's employment was terminated on February 7, 2019. At this time he was 64 years old.

**ANSWER:**     CMA admits that it discharged plaintiff on February 7, 2019, and that plaintiff was 62 years old when hired and 64 when discharged.

41.     On or about March 29, 2019 Plaintiff filed a charge of discrimination based on age discrimination and hostile work environment with the EEOC, which is shared with the IDHR through the agencies' work-share agreement.

**ANSWER:** CMA admits that plaintiff filed a Charge with the EEOC which alleges a violation of ADEA only, the Charge is attached to the Amended Complaint as Exhibit A, and Exhibit A contains a date stamp which suggests the Charge was received by the EEOC on March 29, 2019. CMA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 41 and, therefore, denies them.

**COUNT I**
**Violation of the ADEA for Age Discrimination**

42.     Plaintiff restates and realleges by reference paragraphs 1 through 41 above as though fully set forth herein against Defendant.

**ANSWER:** CMA restates and realleges its answers to Paragraphs 1 through 41 as if fully set forth herein.

43.     On or about March 29, 2019, Bukowski filed a charge of discrimination based on his age against CMA with the EEOC. A true and accurate copy of the charge is attached hereto as Exhibit A.

**ANSWER:** CMA admits that plaintiff filed a Charge with the EEOC which alleges a violation of ADEA only, the Charge is attached to the Amended Complaint as Exhibit A, and Exhibit A contains a date stamp which suggests the Charge was received by the EEOC on March 29, 2019. CMA lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 43 and, therefore, denies them.

44.     The EEOC issued a Notice of Right to Sue on or about July 18, 2019. A true and accurate copy of the Notice is attached hereto as Exhibit B.

**ANSWER:** CMA admits that the EEOC issued a "Dismissal and Notice of Rights," dated July 18, 2019, which found no reasonable cause to believe that age discrimination had occurred in violation of ADEA, which plaintiff attached to his Amended Complaint as Exhibit B. CMA denies the remaining allegations in Paragraph 44.

45.     Bukowski was 64 years old at the time of his termination and was a member of the ADEA's protected class of workers over the age 40.

**ANSWER:**     CMA admits that plaintiff was 62 when hired and 64 when discharged. Plaintiff has inaccurately alleged ADEA's protected class; thus, CMA denies the remaining allegations in Paragraph 45.

46.     On or about February 7, 2019 Bukowski suffered an adverse employment action when he was terminated from his employment with CMA due to his age.

**ANSWER:**     CMA admits only that it lawfully discharged plaintiff on February 7, 2019, and denies the remaining allegations in Paragraph 46.

47.     During the term of his employment, Bukowski met the expectations required of his position and performed his job duties competently and as instructed by his supervisors.

**ANSWER:**     CMA denies the allegations in Paragraph 47.

48.     Bukowski suffered an adverse employment action when Hornik (Defendant's employee and agent) made comments about Bukowski's age and told Bukowski that he was "too old" to continue working for Defendant. Hornik also attempted to extort $2,000 from Bukowski feigning a promise that payment would ensure Bukowski's continued employment with CMA.

**ANSWER:**     CMA denies the allegations in Paragraph 48.

49.     Bukowski also suffered an adverse employment action when he was terminated, without cause, after the incident involving Taiwo Sheleru in which Sheleru hit and shoved Bukowski for allegedly not following Sheleru's instructions.

**ANSWER:**     CMA denies the allegations in Paragraph 49.

50.     CMA's basis for terminating Bukowski was unsupported by the underlying facts and was used merely as a pretext for terminating Bukowski due to his age.

**ANSWER:**     CMA denies the allegations in Paragraph 50.

51.     CMA unlawfully discriminated against Plaintiff when it terminated Bukowski due to his age and not because of his performance or ability to perform his job.

**ANSWER:**     CMA denies the allegations in Paragraph 51.

52.     As a direct and proximate result of CMA's actions, Plaintiff has suffered severe compensatory damages, including without limitation, loss of employment, damage to his

professional reputation, back pay, front pay, overtime pay, vacation days, retirement benefits and other benefits, emotional distress, and other make whole damages.

**ANSWER:**    CMA denies the allegations in Paragraph 52.

WHEREFORE, Plaintiff, Jan Bukowski, prays that this Honorable Court enter judgment in his favor and against Defendant Chicago Meat Authority, Inc. and grant relief in the following form:

A.    All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial;

C.    Defendant be required to pay prejudgment and post judgment interest to Plaintiff on these damages;

D.    A declaratory judgment that Defendant's action violated the ADEA;

E.    An award of reasonable attorneys' fees, costs, and litigation expenses; and,

F.    Such other relief as the Court may deem just or equitable.

**ANSWER:**    CMA denies that plaintiff is entitled to any of his requested relief and respectfully requests the Court to dismiss plaintiff's claims with prejudice, enter judgment in CMA's favor, and award CMA its costs and attorneys' fees and any such further relief as this Court deems appropriate.

## COUNT II
### Violation of IHRA for Age Discrimination and Hostile Work Environment

53.    Plaintiff restates and realleges by reference paragraphs 1 through 52 above as though fully set forth herein against Defendant.

**ANSWER:**    CMA restates and realleges its answers to Paragraphs 1 through 52 as if fully set forth herein.

54.    Defendant CMA is an "employer" within the meaning of the IHRA.

**ANSWER:**    CMA admits the allegations in Paragraph 54.

55.    Plaintiff is an "employee" within the meaning of the IHRA.

**ANSWER:**     CMA admits the allegations in Paragraph 55.

56.     Defendant violated the statue by subjecting Plaintiff to age discrimination and a hostile work environment.

**ANSWER:**     CMA denies the allegations in Paragraph 56.

57.     Defendant, as an employer, is subject to the requirements of the IHRA.

**ANSWER:**     CMA admits that it is subject to the IHRA but denies that it violated the IHRA.

58.     Defendant, as an employer, should not discriminate against its employees because of their age.

**ANSWER:**     Paragraph 58 states plaintiff's own interpretation of the IHRA when it is the Court's role to interpret and apply the law. To the extent a response is required, CMA did not violate the IHRA and, thus, denies the allegations in Paragraph 58.

59.     Defendant, as an employer, has an obligation to ensure that its employees are not discriminated against based on their age.

**ANSWER:**     Paragraph 59 states plaintiff's own interpretation of the IHRA when it is the Court's role to interpret and apply the law. To the extent a response is required, CMA did not violate the IHRA and, thus, denies the allegations in Paragraph 59.

60.     Defendant knows that employment decisions cannot be made on the basis of an employee's age.

**ANSWER:**     Paragraph 60 states plaintiff's own interpretation of the IHRA when it is the Court's role to interpret and apply the law. To the extent a response is required, CMA did not violate the IHRA and, thus, denies the allegations in Paragraph 60.

61.     Defendant knows that it has an obligation to ensure that employees are not subjected to a hostile work environment based on age.

**ANSWER:**     Paragraph 61 states plaintiff's own interpretation of the IHRA when it is the Court's role to interpret and apply the law. To the extent a response is required, CMA did not violate the IHRA and, thus, denies the allegations in Paragraph 61.

62. Defendant knows that it has an obligation to ensure that employees are not subjected to a hostile work environment based on the fact that an employee has complained about unlawful conduct, discrimination, and/or a hostile work environment.

**ANSWER:** Paragraph 62 states plaintiff's own interpretation of the IHRA when it is the Court's role to interpret and apply the law. To the extent a response is required, CMA did not violate the IHRA and, thus, denies the allegations in Paragraph 62.

63. Defendant, as an employer, should have a policy against discrimination and harassment.

**ANSWER:** Paragraph 63 states plaintiff's own interpretation of the IHRA when it is the Court's role to interpret and apply the law. To the extent a response is required, CMA did not violate the IHRA and, thus, denies the allegations in Paragraph 63.

64. Defendant violated that policy by discriminating against Plaintiff based on his age.

**ANSWER:** CMA denies the allegations in Paragraph 64.

65. As a result of Defendant's unlawful conduct, Plaintiff has suffered compensatory damages, lost wages, back pay and front pay, lost future wages, future pecuniary damages, humiliation and embarrassment, damage to his reputation, emotional distress, and other make whole damages.

**ANSWER:** CMA denies the allegations in Paragraph 65.

WHEREFORE, Plaintiff prays for judgment against Defendant in an amount to be proven in excess of $50,000 and such other relief as the Court may deem just or equitable, including but not limited to compensatory damages, back pay, front pay, pre judgment interest, lost future wages, future pecuniary damages, reasonable attorneys' fees, costs, and litigation expenses as a result of Defendant's unlawful conduct.

**ANSWER:** CMA denies that plaintiff is entitled to any of his requested relief and respectfully requests the Court to dismiss plaintiff's claims with prejudice, enter judgment in CMA's favor, and award CMA its costs and attorneys' fees and any such further relief as this Court deems appropriate.

## COUNT III
## Violation of the ADEA for Hostile Work Environment

66.    Plaintiff restates and realleges by reference paragraphs 1 through 65 above as though fully set forth herein against Defendant.

**ANSWER:**    CMA restates and realleges its answers to Paragraphs 1 through 65 as if fully set forth herein.

67.    The actions of Defendant, as perpetrated by its agents and as described and complained of above, are unlawful employment practices in that they have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiff because of his age, in violation of the ADEA.

**ANSWER:**    CMA denies the allegations in Paragraph 67.

68.    Defendant CMA is an "employer" within the meaning of the ADEA.

**ANSWER:**    CMA admits the allegations in Paragraph 68.

69.    Plaintiff is an "employee" within the meaning of the ADEA.

**ANSWER:**    CMA admits the allegations in Paragraph 69.

70.    Plaintiff has performed all conditions precedent to filing this case under the ADEA.

**ANSWER:**    CMA denies the allegations in Paragraph 70.

71.    Defendant violated the ADEA by subjecting Plaintiff to age discrimination and a hostile work environment.

**ANSWER:**    CMA denies the allegations in Paragraph 71.

72.    Specifically, Defendant (through its agent) made comments about Plaintiff's ability to continue his employment due to his age and conditioned Plaintiff's continued employment on the payment of a sum of $2,000 to Hornik.

**ANSWER:**    CMA denies the allegations in Paragraph 72.

73.    Further, Defendant perpetuated a hostile work environment by allowing its employees, such as Sheleru, to physically assault Plaintiff at his workplace, and failing to discipline its employees for using physical violence against Plaintiff.

**ANSWER:**    CMA denies the allegations in Paragraph 73.

74.     Defendant also allowed employees, including Danny Bernotus, to tease, humiliate, insult, harass and bully Plaintiff without reprimanding Bernotus and others or otherwise imposing any consequences against him for this improper behavior.

**ANSWER:**     CMA denies the allegations in Paragraph 74.

75.     Defendant failed to take any action to curtail the misconduct of its employees, and in the process knew or should have known that its employees were engaging in severe and pervasive harassment directed towards the Plaintiff as a result of his age.

**ANSWER:**     CMA denies the allegations in Paragraph 75.

76.     Defendant's conduct, carried out through its employees, created a subjectively and objectively hostile work environment for Plaintiff due to Plaintiff's age.

**ANSWER:**     CMA denies the allegations in Paragraph 76.

77.     Defendant, as an employer, is subject to the requirements of the ADEA.

**ANSWER:**     CMA admits that it is subject to ADEA but denies that it violated ADEA.

78.     Defendant, as an employer, should not discriminate against its employees because of their age and it has an obligation to ensure that its employees are not discriminated against based on their age.

**ANSWER:**     Paragraph 78 states plaintiff's own interpretation of ADEA when it is the Court's role to interpret and apply the law. To the extent a response is required, CMA did not violate ADEA and, thus, denies the allegations in Paragraph 78.

79.     Defendant knows that employment decisions cannot be made on the basis of an employee's age and that it has an obligation to ensure that employees are not subjected to a hostile work environment based on age.

**ANSWER:**     Paragraph 79 states plaintiff's own interpretation of ADEA when it is the Court's role to interpret and apply the law. To the extent a response is required, CMA did not violate ADEA and, thus, denies the allegations in Paragraph 79.

80.     Defendant knows that it has an obligation to ensure that employees are not subjected to a hostile work environment based on the fact that Bukowski reported each of the above described incidents to his supervisor and/or to Defendant's Human Resources department and had attempted to submit a written complaint about unlawful conduct, discrimination, and/or a hostile work environment which Human Resources declined to make part of Plaintiff's file.

**ANSWER:** CMA denies the allegations in Paragraph 80.

81.    Defendant, as an employer, should have a policy against age discrimination and harassment.

**ANSWER:** Paragraph 81 states plaintiff's own interpretation of ADEA when it is the Court's role to interpret and apply the law. To the extent a response is required, CMA did not violate ADEA and, thus, denies the allegations in Paragraph 81.

82.    Defendant subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Plaintiff's employment and by knowingly failing and refusing to protect Plaintiff from those hostile and abusive conditions.

**ANSWER:** CMA denies the allegations in Paragraph 82.

83.    As a result of Defendant's unlawful conduct, Plaintiff has suffered compensatory damages, lost wages, back pay and front pay, lost future wages, future pecuniary damages, humiliation and embarrassment, damage to her [sic] reputation, emotional distress, and other make whole damages.

**ANSWER:** CMA denies the allegations in Paragraph 83.

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment in Plaintiff's favor and against the Defendant for the following:

A.    All wages and benefits Plaintiff would have received but for the discrimination, including prejudgment interest;

B.    Compensatory damages in an amount to be determined at trial;

C.    Defendant be required to pay prejudgment interest to Plaintiff on these damages;

D.    A permanent injunction enjoining the Defendant from engaging in the discriminatory practices complained of herein;

E.    A permanent injunction requiring that the Defendant adopts employment practices and policies in accord and conformity with the requirements of the ADEA, and further requiring that Defendant adopts and initiate effective remedial actions to ensure equal treatment of employees regardless of age;

F.    A declaratory judgment that Defendant's actions violate the ADEA;

G. The Court retain jurisdiction of this case until such time as it is assured that Defendant has remedied the policies and practices complained of herein and is determined to be in full compliance with the law;

H. An award of reasonable attorneys' fees, costs, and litigation expenses; and,

I. Such other relief as the Court may deem just or equitable.

**ANSWER:** CMA denies that plaintiff is entitled to any of his requested relief and respectfully requests the Court to dismiss plaintiff's claims with prejudice, enter judgment in CMA's favor, and award CMA its costs and attorneys' fees and any such further relief as this Court deems appropriate.

## AFFIRMATIVE AND OTHER DEFENSES

Defendant CMA submits the following affirmative and other defenses to the Amended Complaint. By stating these defenses, CMA does not assume the burden of proving any fact, issue or element of any cause of action where such burden properly belongs to plaintiff:

1. The Amended Complaint fails to state a claim upon which relief can be granted.

2. Plaintiff has failed to timely exhaust his administrative remedies as to one or more allegations he has pled and/or may plead in this case. Accordingly, this Court lacks jurisdiction over plaintiff's claims to the extent that such claims were neither encompassed within the Charge he filed nor the administrative investigation thereof.

3. The claims against CMA are barred in whole or part by the applicable statute of limitations.

4. Plaintiff has failed to make a reasonable effort to mitigate his purported damages or has mitigated his damages, which must reduce the amount of any damages award.

5. Plaintiff's claims are barred, in whole or in part, by after-acquired evidence.

6. Plaintiff's claims against CMA for damages must be eliminated or reduced to the extent that they are, have been or will be compensated from collateral sources (*e.g.*, unemployment benefits).

7. CMA exercised reasonable care to prevent and promptly correct any alleged discriminatory or harassing behavior, and plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities provided by CMA.

8. CMA abides by its strict anti-discrimination and anti-harassment policies, which prohibit any discrimination on the basis of age.

9. CMA's acts or omissions were taken for legitimate, non-discriminatory and non-pretextual reasons.

10. Plaintiff's claims against CMA are barred by the doctrine of unclean hands.

11. Plaintiff's claims, to the extent they state claims that entitle plaintiff to relief, are subject to applicable damages caps or limitations.

12. Some of plaintiff's alleged causes of action seek recovery for the same alleged wrong or wrongs as other causes of action. Accordingly, plaintiff's claims are barred to the extent that plaintiff seeks multiple recoveries for the same alleged wrong or wrongs.

13. The claims against CMA are barred by the doctrines of waiver, estoppel, ratification and/or acquiescence. Plaintiff has waived his right, if any, or is estopped from pursuing his claims against CMA by reason of his own acts, omissions or course of conduct. He has also ratified or acquiesced in CMA's alleged violations.

14. CMA denies that any of its employees, officers or agents acted in any manner that would constitute a violation of ADEA or the IHRA. If any such violation occurred, it occurred outside the scope of employment or agency and without the consent of CMA. CMA does not

authorize, condone, ratify or tolerate any illegal or tortious acts but instead prohibits such acts. Any such conduct may not be attributed to CMA through principles of agency, respondeat superior or otherwise.

15.     Plaintiff's claims against CMA for injunctive and other equitable relief are barred because he has an adequate and complete remedy at law.

16.     CMA presently has insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative or other defenses available. CMA herein reserves the right to assert additional defenses in the event that discovery indicates they would be appropriate.

WHEREFORE, Chicago Meat Authority, Inc. respectfully requests that the Court dismiss plaintiff's Amended Complaint with prejudice, with costs and attorney's fees to defendant, and award defendant any other relief that the Court deems just and equitable.

Respectfully submitted,

CHICAGO MEAT AUTHORITY, INC.

By: /s/ Anne E. Larson
     One of Its Attorneys

Anne E. Larson
Deborah H. Share
OGLETREE, DEAKINS, NASH, SMOAK &
  STEWART, P.C.
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606
312.558.1220

Dated: February 11, 2020

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on February 11, 2020, the foregoing **Answer and Affirmative and Other Defenses to Plaintiff's Amended Complaint** was filed electronically with the Clerk of Court using the ECF system, which sent notification of such filing to the following:

Lucas M. Fuksa, Esq.
Vincent P. Formica, Esq.
Fuksa Khorshid, LLC
200 W. Superior, Suite 410
Chicago, Illinois 60654

*Attorneys for Plaintiff*


/s/ Anne E. Larson